# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

**Turbine Powered Technology LLC**      **Civil Action No. 6:19-cv-00475**

**versus**                              **Judge Terry A Doughty**

**Crowe et al**                         **Magistrate Judge Whitehurst**

## REPORT AND RECOMMENDATION

Before the undersigned by referral from the district judge is Plaintiff, Turbine Powered Technology LLC's ("TPT"), Motion to Remand [Rec. Doc. 14], an Opposition Memorandum filed by Defendant David Crowe ("Crowe") [Rec. Doc. 28] and a Reply thereto, filed by TPT [Rec. Doc. 32]. Based on the foregoing, the undersigned recommends that the motion be granted.

## I. PROCEDURAL BACKGROUND

The Petition initiating this action was originally filed by TPT on November 7, 2016, in the 16th Judicial District Court for the Parish of St. Mary, State of Louisiana, Docket No. 130379-F ("State Court Case"). The Petition set forth multiple causes of action under Louisiana law including breach of contract, breach of fiduciary duty, tortious interference with a business relationship and violations of the Louisiana Uniform Trade Secrets and Unfair Trade Practices Acts against the named defendants, David Crowe ("Crowe"), Kenneth Braccia ("Braccia"), Kent Ellsworth ("Ellsworth"), AZTT, LLC, AZTT, Inc., all residents of the state of Arizona,

Advanced Turbine Services, LLC ("ATS") and Turbine Integrated Power Systems, LLC ("TIPS"), residents of the state of Connecticut, and Donald "Danny" Foley and George Jackson, residents of the state of Louisiana, (collectively referred to as "Defendants"). No claims were alleged under federal statutes or law. *R. 18-4.*

TPT filed an Application for a Temporary Restraining Order ("TRO") and for Preliminary Injunction with the Petition. *Id.* The state court granted the TRO against Defendants and conducted a preliminary injunction hearing on January 3, 2017. Affidavits of Long Arm Service on defendants Ellsworth and AZTT, LLC were filed into the record. Affidavits of Long Arm Service in the record on defendants AZTT, Inc., ATS and TIPS indicated these defendants refused Long Arm Service. Also, Crowe was served with the preliminary injunction. While none of the Defendants were present at the hearing, the state court judge held that they were properly served and granted the preliminary injunction on January 5, 2017 against defendants Ellsworth, Braccio, AZTT, LLC, AZTT, Inc., ATS and TIPS.[1] *R 14-2.* The injunction enjoined and enjoins Crowe from, among other things, "[t]he use or conveyance of any and all licenses related to software and/or hardware for industrial turbine controls for T-55 and TF40 engines…" and "[u]sing T-55 and TF40 digital engine controls on the Team Vesco racing project." *R. 14-2, at ¶¶ (b) and (q).*

---

[1] Crowe was an agent, employee, and person in active concert with and participation with the enjoined entities. Debtor David Crowe, as owner of AZTT, Inc. and a co-owner of AZTT, LLC, remains an agent, employee, and person in active concert with and participation with the enjoined entities.

2

While the case was pending in state court, Defendants filed multiple motions contending various exceptions including a motion to dissolve the preliminary injunction. Following a full day of hearings on the motions, the state judge denied some motions and took others, including the Defendants' motion to dissolve the preliminary injunction, under advisement. The court indicated a ruling would issue by July 15, 2017.

On March 13, 2017, Crowe, Braccio, AZTT, Inc. and ATS filed a lawsuit in this Court against TPT, Marine Turbine Technology ("MTT")—TPT's sister company, and Mr. Ted McIntyre, personally, as the owner of both companies. *See, Arizona Turbine Technology et al v. Turbine Powered Technology et al*, Civil Action No. 6:17-00386. Defendants included claims for defamation under Louisiana law, Louisiana Unfair Trade Practices, defamation and three claims for unfair competition under Arizona law, as well as a claim for conspiracy. Specifically, Defendants alleged that TPT, as the plaintiff in the State Court Case, was defaming them and engaging in other allegedly inappropriate business practices. *Id*.

On April 10, 2017, ATS filed a Complaint for Damages in this Court against TPT c1aiming breach of contract, unjust enrichment and detrimental reliance under Louisiana law arising from the same contractual relationship that TPT had sued upon in the State Court Case, *Advanced Turbine Services, LLC v. Turbine Powered Technology LLC*, Civil Action No. 17-00510. TPT filed a Motion to Consolidate 17-

3

00510 with 17-00386 based upon commonality of the parties and the claims in the State Court Case. ATS opposed the motion.  On July 24, 2017, the Court granted the motion consolidating the cases.

While Defendants were filing the above federal cases in this Court, the State Court Case continued to be litigated. Before the state court issued its ruling on the remaining exceptions and the motion to dissolve the preliminary injunction, on June 22, 2017, Defendants filed a Notice of Removal of the State Court Case to the 16th JDC on the grounds that there was federal question jurisdiction based on patent law as well as diversity jurisdiction. The case was assigned to then District Judge Rebecca F. Doherty as Civil Action No. 17-cv-00801. A week later, on June 29, 2017, Defendants again filed a motion to dissolve the preliminary injunction entered in state court, this time in the federal court case. On July 17, 2017, Judge Doherty denied the motion as premature. TPT filed a Motion to Remand two days later, arguing the case should be remanded for lack of subject matter jurisdiction as the parties were not diverse in citizenship and no questions of federal law pertained to the case. The Motion to Remand was assigned to the undersigned judge for report and recommendation. On July 24, 2017, Defendants filed a Motion to Vacate the State Court Judgment. The Motion to Vacate was set before Judge Doherty.[2]

---

[2] Before deciding any of the pending motions, Judge Doherty took senior inactive status on October 1, 2018. Judge Doherty's departure left no active district judges in the Lafayette Division. Therefore, the removed case was left unassigned.

Thereafter, on August 17, 2017, Eco-Stim Energy Solutions Inc. ("Eco-Stim"), an oil-field service company, with which Crowe and his companies was associated as a contractor, filed a declaratory judgment lawsuit against McIntyre, TPT, MTT and MTT Properties, LLC, in the Southern District of Texas. *See, Eco-Stim Energy Solutions Inc V. McIntyre et al*, 4:17-cv-02531. Eco-Stim had been served with a copy of the preliminary injunction against Crowe, AZTT, Inc. and AZTT, LLC. Eco-Stim's lawsuit alleged that it had been wrongly threatened and accused by defendants, McIntyre and TPT, of violating their patent, trade secret and intellectual property rights. In the complaint, Eco-Stim cited testimony from the State Court Case involving the motion to dissolve the injunction as well as the June 22, 2017 removal of Civil Action No. 17-cv-00801. Eco-Stim further cited and quoted the lawsuit in this Court filed by AZTT and Crowe, 17-cv-00386. Throughout the lengthy complaint Eco-Stim's allegations criticized and vilified McIntyre, while supporting the actions of Crowe and AZTT. Ultimately, Eco-Stim complained that McIntyre's actions caused it to suffer *inter alia* lost profits and lost business opportunities.

On February 27, 2018, U.S. District Judge Nancy Atlas, Southern District of Texas, transferred Eco-Stim, 4:17-cv-02531, to this Court stating that the Texas lawsuit involved claims that "substantially overlap with the Louisiana cases" and therefore the lawsuit should be decided by the Louisiana court. Judge Atlas further

5

considered the defendants' motion to stay the case in favor of related first-filed cases in Louisiana. Judge Atlas agreed and ordered that the case should be stayed or consolidated into the already consolidated cases Civil Action Nos. 17-cv-00386 and 17-cv-00510. Upon transfer, the case became Civil Action No. 18-cv-00249 in this Court. On August 16, 2018, the case was stayed and administratively closed pending adjudication of the State Court Case.

On February 9, 2018, before Judge Atlas transferred the Texas lawsuit, Defendants filed an "Emergency Motion to Reassign Case and Dissolve Preliminary Injunction" in Civil Action No. 17-00801, demanding, "If the Court does not act on Defendants' Emergency Motion by [February 23, 2019], Defendants will consider the Emergency Motion denied and will seek immediate relief before the appropriate Federal Court of Appeals."

Five days later, on February 14, 2018, the Court completed and issued its 24 page Report and Recommendation recommending that the case be remanded to the 16th JDC. On February 22, 2018, Judge Drell issued an order denying the Emergency Motion to Dissolve the Preliminary Injunction as premature for the reasons set forth in the July 17, 2017 ruling by Judge Doherty. In his order, Judge Drell addressed "the threatening pleadings filed by the attorneys in the motion." Specifically, Judge Drell stated that counsel "'threatened' this Court to seek a spurious appeal after counsel frivolously and improperly 'deemed' a non-ruling by the Court on a specific

6

date as a denial of the motion on its merits."[3] The following day, February 23, 2018,

Judge Drell adopted the Report and Recommendation remanding the case.

Once the State Court Case was remanded, on March 2, 2018, the state judge

issued a Judgment on the various rules to show cause that had previously been heard

in June, 2017. On April 2, 2018, the state court issued its reasons for having

previously denied Defendants' Motion to Dissolve the Preliminary Injunction and

entered a written Judgment so holding. Defendants sought writs to the First Circuit

Court of Appeal, which remain pending. *R. 14-1, p. 13.*

TPT moved for contempt against Defendants contending they were continuing

to do business in violation of the court's preliminary injunction. The state judge

conducted a hearing and on April 9, 2018 granted the Motion for Contempt,

reserving damages for a future hearing.

Before the State Court Case was remanded the court issued several orders

related to TPT's motions related to Defendants' failure to respond to  discovery

requests. On February 12, 2019, TPT again filed a Motion for Contempt against

Crow and Braccio, AZTT, Inc., AZTT, LLC and ATS for failure to comply with the

court's order mandating discovery. After a March 6, 2019 hearing, on March 22,

2019, the court awarded costs and further ordered Crowe and Braccio to pay

---

[3] On May 5, 2018, Judge Drell conducted a hearing on the record in which counsel for Defendants were ordered to appear and show cause why they should not be sanctioned for threats communicated to the court and court personnel, use of a "deemed assumption" and threat of a "bogus appeal" to intimidate the court. The court issued a verbal admonition to counsel for Defendants under Rule 11.

$100.00/day to the registry of the Court for each day until "full and proper discovery responses as compelled by the Court were produced."

Because Defendants failed to comply with the court's orders and judgment on contempt, another Motion for Contempt and Sanctions was filed on March 28, 2019 and a hearing was scheduled to be conducted on May 1, 2019. While these motions were under consideration, on April 14, 2019, Defendants filed a second Notice of Removal of the State Court Case. The removed case was designated 19-00475—the case now before this Court. *See, Turbine Powered Technology L L C v. Crowe et al*, Civil Action No. 6:19-00475. In their Removal Notice, Defendants contend that this case, including the allegations asserted by TPT and the allegations in Defendants' counterclaims, constitute claims arising in a case commenced by defendant Crowe on April 12, 2019, in the bankruptcy court in the District of Arizona, under Chapter 11 of the United States Code (the "Bankruptcy Code"). *See, In re David and Colleen Crowe*, United State Bankruptcy Court, Tucson Division, 4:19-bk-04406-BMW (the "Bankruptcy Case"). Defendants contend that the injunction "severely threatens David Crowe's ability to reorganize under Chapter 11." They further contend, "[t]he claims in this case are inextricably intertwined with the facts concerning the Crowe Chapter 11 case." *R. 28, p. ii.*

On May 15, 2019, TPT filed the instant Motion to Remand this case to the 16th JDC. *R. 14.* While the motion was pending, Defendant Crowe filed "Debtors'

Motion To Enter Into Post-Petition Contract Outside The Ordinary Course Of Business With Team Vesco Racing," apparently requesting that the bankruptcy judge allow Crowe to enter into a third party contract related to the technology at issue in the State Court Case injunction. *R. 33-1.* In its June 20, 2019 Ruling, the bankruptcy court held the following,

> [T]he Court in the Louisiana Litigation is in the best position to interpret the injunction ... this court will therefore apply permissive abstention to abstain only from the foregoing narrow issues in order to allow the Louisiana court to make such determination. The debtors may proceed in the state court action to obtain such determination. If debtors choose not to proceed, then the state court action remains stayed as to the debtors.

*Id.*

## II. CONTENTIONS OF THE PARTIES

TPT contends that this action must be remanded a second time because (1) Crowe's bankruptcy is "a clear attempt to avoid" the contempt charges he faces in the State Court Case for violating the preliminary injunction order and contempt proceedings are not removable under the principle of federalism; (2) the *Rooker-Feldman* Doctrine applies to the preliminary injunction in dispute such that this Court lacks subject matter jurisdiction to re-litigate the issue; (3) mandatory and discretionary abstention apply in this "non-core" bankruptcy case; and (4) Crowe's Chapter 11 Petition should be dismiss for cause because Crowe is in bad faith.

Defendants argue (1) the Motion to Transfer should be decided before the

Motion to Remand so that the bankruptcy court can determine whether it wishes to hear Defendants' claims; (2) the Court should not remand the case before the bankruptcy court lifts the automatic stay; (3) mandatory and permissive abstention do not apply; (4) the *Rooker-Feldman* Doctrine does not apply because "the Defendants are not complaining of injuries caused by a state court judgment."

### III. LAW AND ANALYSIS

While a defendant has a right to seek subsequent removals after remand, *Browning v. Navarro*, 743 F.2d 1069, 1079–80 n. 29 (5th Cir.1984), as a general rule, once a case is remanded to state court, a defendant is precluded only from seeking a second removal on the same ground, *S.W.S. Erectors,  Inc . v.  Infax, Inc*., 72 F. 3d 489, 492 (5th  Cir. 1996). Because this matter was previously remanded  for lack  of  diversity  jurisdiction  and  federal question, those  issues cannot be re-litigated.  Thus, Defendants only ground for removal before the Court is pursuant to 28 U.S.C. § 1334—that David Crowe, one of the eight Defendants in this matter, has now sought  bankruptcy protection.

### A.  MOTION TO REMAND VS. MOTION TO TRANSFER VENUE

As to jurisdiction based on Crowe's filing under Chapter 11, Defendants argue that the Court should consider their motion to transfer this matter to the bankruptcy

10

court in the District of Arizona prior to considering the motion to remand.[4] Defendants cite *Bayou Steel v. Boltex Mfg. Co.*, 2003 WL 21276338 (E.D. La. 2003), contending that the circumstances "are the same" as in this case. Defendants state that *Bayou Steel* supports their position that, "[i]n this situation, there is a strong presumption in favor of transferring to the judicial district of the bankruptcy court." They assert that the District of Arizona is the court best situated to evaluate the merits of TPT's call for remand or abstention, and therefore, the motion to transfer should be determined first.

The Court finds that the circumstances in *Bayou Steel* are not the same as those in the instant case. In *Bayou Steel* the court addressed a situation in which the plaintiff, Bayou Steel, filed for bankruptcy relief two months *before* an action was commenced in Louisiana state court against Boltex. Finding there was a "strong presumption" in favor of placing venue in the Northern District of Texas where the bankruptcy proceedings were already pending, the court transferred the case to the Northern District of Texas for referral to the bankruptcy court. Unlike *Bayou Steel*, in this case Crowe filed for relief in the bankruptcy court in the District of Arizona five (5) years *after* the State Court Case was filed. *See R. 28, p. 7 of Defendants' Opposition Memorandum* ("This litigation, or cases closely related to it, have been

---

[4] Defendants Motion to Transfer was filed on the same date as their opposition to TPT's Motion to Remand. [Rec. Docs. 27, 28].

ongoing since 2014.").

TPT argues the majority of courts agree that in a case, such as this one, involving removal of a state court suit to a district where the bankruptcy proceeding is not located, the jurisdictional issues must be addressed before venue or transfer issues. The cases cited by TPT as well as others found in the Court's research support this position. *See e.g. Barnett v. Dutch Run-Mays Draft, LLC*, 2013 WL 960183, at *6 (S.D.W.Va.,2013) ("the district court to which the action was removed has the right to decide a pending motion to abstain or remand before determining whether venue is proper in the home bankruptcy court"); *Regions Bank v. JP Realty Partners, Ltd.*, 912 F. Supp. 2d 604, 611-13 (M.D. Tenn. 2012) (addressing jurisdiction before transfer where bankruptcy case only in initial filing stages); *Lennar Corp. v. Briarwood Capital LLC*, 430 BR 253, 260-61 (S.D. Fla. 2010); *In re Scanware, Inc*., 411 B.R. 889, 896 (S.D.Ga.,2009); *Frelin v. Oakwood Homes Co*., 292 B.R. 369, 379 (Bankr.E.D.Ark.2003); *Lone Star Industries. Inc. v. Liberty Mutual Insurance*, 131 BR 269, 271-2 (D. Del. 1991) (automatic transfer of the bankruptcy case assumes that venue is proper in the home bankruptcy court and renders the change of venue statutes meaningless); *In re Engra, Inc*., 86 B.R. 890, 893 (S.D.Tex.,1988).

As pointed out in *In re Engra, Inc*, 28 U.S.C. § 1452(a) provides for removal to the district in which the removed civil action was pending rather than the district

12

in which the bankruptcy case was filed, and provides that the court to which the civil action is removed may remand such cause of action on any equitable ground.[5] The *Engra* court further noted that "28 U.S.C. 1334 does not limit jurisdiction over all matters pertaining to a bankruptcy case or proceeding to the district court where the case was filed." *Id.* at 893 n. 4 (comparing § 1334(a)-(b) providing jurisdiction to district courts in the plural, to § 1334(d) which provides only the district court in which a case is filed with exclusive jurisdiction over property of the estate and property of the debtor). Furthermore, the provision governing the remand of actions removed to federal court states that "[t]he court to which a claim or cause of action is removed" is the court that should determine whether to remand the matter to state court based on equitable grounds. 28 U.S.C. § 1452(b). Finally, the change of venue statute applicable to bankruptcy proceedings, 28 U.S.C. § 1412, clearly provides "that the transfer of a case from a local bankruptcy court to a home bankruptcy court is discretionary rather than mandatory or automatic." *In re AG Industries, Inc*., 279 B.R. 534, 540 (Bkrtcy.S.D.Ohio,2002) (citing *Irwin v. Beloit Corp*. (*In re Harnischfeger Industries, Inc*.), 246 B.R. 421, 436 n. 42 (Bankr.N.D.Ala.2000) (noting the use of the word "may" in the statute). The Court finds that the foregoing statutory language supports this Court's responsibility to make the decision of

---

[5] 28 U.S.C. § 1452(a) allows removal only "to the district court for the district where such civil action is pending if such district has jurisdiction of such claim or cause of action under section 1334 of this title."

whether to remand or abstain *before* determining whether venue is proper in the home bankruptcy court.

### B. THE AUTOMATIC STAY

As previously stated, Crowe filed a petition in the U.S. Bankruptcy Court for the District of Arizona on April 12, 2019. *R. 28-1*. The provisions of the United States Bankruptcy Code, therefore, apply to all pending claims against Crowe. Defendants contend that the Court should not remand this case without the bankruptcy court lifting the automatic stay. In support, they cite the case of *Liljeberg Enterprises Intern., LLC v. Vista hospital of Baton Rouge, Inc*., 2004 WL 27225965, *2 (E.D.La. 2004).

The Bankruptcy Code provides that the filing of a petition for bankruptcy "operates as a stay" of:

> ... the commencement or continuation, including the issuance or employment of process, of a judicial, or administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title ....

11 U.S.C. § 362(a). By its terms, therefore, the automatic stay applies to any (i) continuation of (ii) any action or proceeding commenced before the commencement of the bankruptcy proceedings.[6] There is no doubt that TPT filed this action before

---

[6] The stay (i) provides the debtor breathing space by stopping all collection efforts, harassment, and foreclosure actions and (ii) prevents the dissipation of a debtor's assets through multiple suits outside the bankruptcy process. *Matter of Cowin*, 864 F.3d 344, 352 (5th Cir. 2017); *see also Collier on Bankruptcy* § 362.03.

Crowe filed the bankruptcy petition. This case is an "action or proceeding against the debtor that was ... commenced before" the debtor filed for bankruptcy, and subject to the automatic stay provision. 11 U.S.C. § 362(a)(1). Thus, the sole question presented is whether the Court's remand of the case to state court constitutes a barred "continuation" of the action.  For the reasons that follow, the Court finds it does not.

Defendants cite *Liljeberg Enterprises International, LLC v. Vista Hospital of Baton Rouge, Inc*. as authority for applying the Automatic Stay. In *Liljeberg*, the court declined to remand a lawsuit to state court finding the automatic stay triggered by a defendant's bankruptcy prohibited a remand. *See*, 2004 WL 2725965, at *1–2 (E.D.La. Nov. 24, 2004).  Because ordering remand or abstention under Sections 1452(a) or 1334 requires the court to "exercise its 'discretion or judgment,'" the *Liljeberg* court held that it did not constitute a mere "ministerial" act against which the automatic stay did not apply. *Id.* at *2.

This Court's review of *Liljeberg* and its history indicates that its holding is the sole outlier in the sizeable body of precedent. *See, e.g., Henry v. Cooper/T. Smith Stevedoring Co*., 2016 WL 6080992, at *2 (E.D.La., 2016)*; Hudgens v. Deer Valley Home Builders, Inc*., 2009 WL 2878052 (W.D. La. 2009); *Schaffer v. Atl. Broadcasting of Lindwood NJ, LLC*, 2011 WL 1884734, at *4 (D.N.J. 2011); *Sanders v. Farina*, 67 F.Supp.3d 727, 730 (E.D.Va.,2014); s*ee also McCratic v.*

*Bristol-Myers Squibb & Co*., 183 B.R. 113, 115-16 (N.D. Tex. 1995); *cf. Lindley Contours, LLC v. AABB Fitness Holdings, Inc*., 414 Fed.Appx. 62 (9th Cir. 2011) (remand "has no impact on the debtor's assets, does not impact the relative position of the creditors, and would not interrupt debtor's breathing spell."). In *Sanders*, *supra*, the court found that *Liljeberg* was both "unpersuasive and distinguishable." *Id.* at 730-731. The court explained,

> It is unpersuasive because its reliance on the ministerial act exception is misguided: The issue is not whether the remand should fall into an exception to Section 362, but rather whether a remand is a "continuation" of an action covered by Section 362. For the reasons noted here, and as many courts have found, a remand does not constitute a continuation of a preexisting action. Moreover, a remand under Section 1452(a) is quite unlike a remand pursuant to 28 U.S.C. § 1441; the former may issue "on any equitable ground" whereas the latter is a mandatory consequence of a lack of jurisdiction or because removal was otherwise improper. In summary, the automatic stay does not bar a remand pursuant to 28 U.S.C. § 1441.

Under circumstances such as this case, courts generally rely on two basic principles. First, a district court may remand a lawsuit to state court for lack of subject matter jurisdiction or improper venue notwithstanding a pending petition for bankruptcy filed by one of the defendant-debtors. *See Picco v. Global Marine Drilling Co*., 900 F.2d 846, 850 (5th Cir.1990) ("Notwithstanding the issuance of an automatic stay, courts retain jurisdiction to determine the applicability of the stay to litigation pending before them, and to enter orders not inconsistent with the terms of the stay."); *Arnold v. Garlock, Inc*., 288 F.3d 234, 236 (5th Cir.2002) ("*Garlock II*")

(same; *see also Evans v. Anderson*, 2010 WL 118398, at *1 (N.D.Cal. Jan.07, 2010) ("[W]here a district court lacks jurisdiction over the action filed before it the court is not without power to remand the action and the stay does not deprive it of that power.") *Cnty. of Cook v. Mellon Stuart Co*., 812 F.Supp. 793, 798 n. 3 (N.D.Ill.1992) ("The subsequent bankruptcy filing and resulting stay under section 362 of the Bankruptcy Code, 11 U.S.C. § 362, do not prevent this court from remanding an improperly removed action."). Second, because a remand is not an adjudication on the merits, it does not jeopardize or infringe on a debtor's "breathing space" or threaten to deplete the estate against the interests of other creditors, and therefore, is consistent with the purposes of the stay. *Sanders*, 67 F.Supp.3d at 730. Moreover, a remand does not put either party "in a better or worse position, legally or financially, than the position [they] occupied at the time of removal." *Hudgens v. Deer Valley Home Builders, Inc.*, 2009 WL 2878052, at *2 (W.D.La. Sept. 4, 2009). A remand simply sends the case back to the proper court, which can facilitate the most judicially efficient resolution to the dispute.

Considering the foregoing, the Court finds that remand of this matter to the Louisiana State court does not violate 11 U.S.C. § 362.

### C. THE ROOKER-FELDMAN DOCTRINE

Reduced to its essence, the *Rooker–Feldman* doctrine holds that inferior federal courts do not have the power to modify or reverse state court judgments. The

doctrine occupies "narrow ground": it bars only "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp*., 544 U.S. 280, 284 (2005). The doctrine "applies only in circumstances closely akin to those addressed in the *Rooker* and *Feldman* decisions, in which a party suffered an adverse final judgment rendered by a state's court of last resort, and then initiated proceedings in a lower federal court seeking review and reversal of the state-court judgment." *Id.* The *Rooker-Feldman* doctrine has four elements:

1) A state court loser;

2) Alleging harm caused by a state court judgment;

3) That was rendered before the federal court proceeding began; and

4) The federal suit requests review and reversal of the state court judgment

*Houston v. Queen*, 606 Fed. Appx 725, 730 (5th Cir. 2015) (citing *Exxon Mobil Corp. at* 284.)

"A state court judgment is attacked for purposes of *Rooker–Feldman* 'when the [federal] claims are "inextricably intertwined" with a challenged state court judgment,' or where the losing party in a state court action seeks 'what in substance would be appellate review of the state judgment.' " *Weaver v. Tex. Capital Bank, N.A*., 660 F.3d 900, 904 (5th Cir.2011). Under this doctrine, "lower federal courts

are precluded from exercising appellate jurisdiction over final state-court judgments." *Lance v. Dennis*, 546 U.S. 459, 463 (2006) (*per curiam*). "A federal complainant cannot circumvent this jurisdictional limitation by asserting claims not raised in the state court proceedings or claims framed as original claims for relief. *Rooker–Feldman* "does not preclude federal jurisdiction over an 'independent claim,' even 'one that denies a legal conclusion that a state court has reached.'" *Weaver*, 660 F.3d at 904 (citing *Exxon*, 544 U.S. at 293).

Defendants argue only that the *Rooker-Feldman* doctrine does not apply where the federal court is reviewing temporary orders of the state court and no final state court judgment has been rendered. *R.* 28, p. 16, (citing *Illinois Cent. R. Co. v. Guy*, 682 F.3d 381, 390 (5th Cir. 2012). While Defendants contend that "the application of [the cited] authorities to the facts of this case show the *Rooker-Feldman* doctrine does not apply," they fail to demonstrate how the "authorities" apply in this case. Rather, they merely state that "the preliminary injunction issued by the state court is not final judgment."

TPT asserts the state court issued a number of final judgments against Defendants, including Crowe: (1) Judgment on Preliminary Injunction granted on January 5, 2017 and March 2, 2018, *R. 14-2*, as well as Judgment denying Defendants' Motion to Dissolve Preliminary Injunction and affirming the Preliminary Injunction on April 2, 2018, *R. 14-3* (Defendants sought writs on the

Judgment to the Louisiana First Circuit Court of Appeal which remain pending), *R. 14-1, p. 13;* (2) December 12, 2018, Judgment on Motion To Compel awarding TPT attorney's fees and expenses, *R. 14-7*; and (3) Judgment granting TPT's Motion to Compel and Sanctions, holding Defendants in contempt for the second time, issuing bench warrants and assessing costs, all issued on March 22, 2019. *R. 14-8.*

There is disagreement among the circuits as to whether all state proceedings, including appeals, must have concluded before the federal suit is initiated in order for *Rooker–Feldman* to apply. *See Storyville Dist. New Orleans, LLC v. Canal St. Dev. Corp.*, 785 F.Supp.2d 579, 588–90 (E.D.La.2011) (identifying and explaining the split in authority); *cf.* 18B Charles Alan Wright et al., *Federal Practice and Procedure* § 4469.1 (2d ed.2002 & Supp. 2014) ("One question that may complicate application of the [*Exxon Mobil*] decision will arise from identifying the level of finality that must be reached by a state decision to invoke *Rooker–Feldman* principles as to any later-filed federal action."). The Fifth Circuit has taken inconsistent positions on the matter. In *Hale v. Harney*, 786 F.2d 688, 691 (5th Cir.1986), issued before *Exxon Mobil*, the court applied *Rooker–Feldman* to bar a federal suit despite the pendency of an appeal in state court; but in *Rowley v. Wilson*, 200 Fed.Appx. 274, 275 (5th Cir.2006) (*per curium*), the court declined to apply *Rooker–Feldman* because the case was on appeal to a state appellate court, observing that "[*Exxon Mobil*] tells us when a state court judgment is sufficiently final for

operation of the *Rooker–Feldman* doctrine: when 'the state proceedings [have] ended.'"

Recognizing the dispute between *Hale* and *Rowley,* in *Houston v. Venneta Queen*, the court stated:

> Although *Hale* predated *Exxon*, the split in authority following *Exxon* on the question of finality suggests that that case did not "unequivocally" overrule *Hale*. Further, the portion of Exxon quoted in *Rowley*—an unpublished opinion with limited precedential value under 5th Circuit Rule 47.5.4—is found not in *Exxon's* holding but in its description of the *Rooker* and *Feldman* cases, *see Exxon*, 544 U.S. at 291. *Exxon's* holding refers only to "state-court judgments rendered before the district court proceedings commenced." Id. at 284, 125 S.Ct. 1517. Accordingly, we appear to be bound by *Hale* pursuant to this Circuit's rule of orderliness.

*Id.,* 606 F. App'x 725, 731 (5th Cir. 2016). In *Houston,* the plaintiffs sought federal review of a single state-court judgment: the 42nd JDC's judgment of possession in favor of Daisy Cotton (the deceased's live-in girlfriend) and the associated rulings contained in that judgment. *Id.* at 731; but *cf. Gross v. Dannatt*, 736 Fed.Appx. 493 (5th Cir. 2018) (*Rooker-Feldman* Doctrine did not apply because a state-court appeal was pending when the federal suit was filed).

In this case, on April 2, 2018 the preliminary injunction in the State Court Case was appealed to the Louisiana First Court, which remains pending. Further, Judgments of Contempt were filed on April 9, 2018 and March 22, 2019. While

Defendants had a right to appeal the contempt judgments, no appeals were filed.[7] Instead, Defendants removed the action to this Court for the second time on April 14, 2019. During both removals, Defendants filed a motion to dissolve the state court preliminary injunction and related Judgment of Contempt. Also, in a later bankruptcy action, Crowe filed a motion to enter into a third party contract essentially moving the bankruptcy court to dissolve the preliminary injunction. Thus, as Defendants have attacked the state court judgments in this Court and the bankruptcy court, it is clear they are seeking relief from these judgments. Further, the instant action is the same as the State Court Case and the federal claims are "inextricably intertwined" with the challenged state court judgments.

Despite the foregoing factual analysis, TPT has not provided the Court with any jurisprudential support to establish that a final judgment has been rendered by the state court as required by the Fifth Circuit, thereby satisfying all elements of *Rooker-Feldman*. Accordingly, the Court declines to find that it lacks subject matter jurisdiction over this action under the *Rooker-Feldman* Doctrine.

### D. MANDATORY ABSTENTION

28 USC § 1334 provides for both mandatory and discretionary abstention in the face of a case which is removed to federal court but which remains founded in

---

[7] Such judgments rendered and signed by the state court constitute final judgments subject to immediate appeal under La.R.S. art. 1915. See La. C.C.P. art. 1915(A)(6); *Stevens v. St. Tammany Parish Government*, 212 So.3d 568, 575 (La. App. 1 Cir. 1/18/17).

state law. Mandatory abstention is required as follows:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under Title 11 but not arising under Title 11 or arising in a case under Title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 USC § 1334(c)(2). Mandatory abstention is required in cases involving state law claims for which the sole basis of bankruptcy jurisdiction is "related to" jurisdiction, even for cases which have been removed to a federal court. *In Re: Southmark Corp*., 163 F. 3d 925, 929 (5th Cir. 1999); *Thomas v. RJ Reynolds Tobacco Company*, 259 BR571, 575 (S.D. Miss. 2001); *Broyles v. US Gypsum Company*, 266 BR 778, 782 (E.D. Tex. 2001). Mandatory abstention applies to non-core proceedings "related to a case under Title 11," but not "arising under Title 11."

> The following conditions must be met to invoke mandatory abstention:
>
> 1) A motion has been timely filed requesting abstention;
> 2) The cause of action is essentially one that is premised on state law;
> 3) The proceeding is non-core or related to the bankruptcy case;
> 4) The proceeding could not otherwise have been commenced in federal court absent the existence of the bankruptcy case; and
> 5) The proceeding has already been commenced and can be timely adjudicated in a state court forum.

*Thomas*, 259 BR at 576; *Broyles*, 266 BR at 782-83. With regard to the above factors, Defendants argue only that the claims involving TPT against Crowe involve a "core

23

proceeding." The Court finds that factors 1, 2, 4 and 5 are met. The sole issue is therefore whether or not the proceeding is "non-core or related to the bankruptcy case."

The Fifth Circuit holds that a proceeding is "core" if it invokes "a substantive right provided by Title 11  or if it is a proceeding that, by its nature, could arise only in the context  of a bankruptcy case." *In  Re: Wood*, 825 F. 2d 90, 97 (5th  Cir. 1987); *See also,  In Re:  OCA, Inc*., 551 F. 3d 359, 367, (5th  Cir. 2008). "If the proceeding does not invoke a substantive  right created by the federal bankruptcy law and is one that could exist  outside  of bankruptcy, it is not a core proceeding; it may be related  to  the bankruptcy  because  of  its  potential  effect,  but  under  § 157(c)(1) it  is  an  'otherwise related' or non-core proceeding." *Wood*, 825 F. 2d at 97.

In core versus no-core matters:

> "Arising  under"  jurisdiction  involves  causes  of  action  created  or determined by a statutory provision of title 11. "Arising in" jurisdiction is not based on a right expressly created by Title 11, but is based on claims  that  have  no  existence  outside  bankruptcy.  "Related  to" jurisdiction is present in a proceeding if the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Core proceedings are matters or proceedings that "are an integral  part  of  the  bankruptcy  case,"  including  "other  proceedings affecting the liquidation of the assets of the estate or the adjustment of the  debtor-creditor ... relationship." "Related-to" matters are those which, because they are peripheral to the concerns of the bankruptcy case  and  based  on  extrinsic  sources  of  law,  require  mandatory abstention.

*See WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp*., 75 F.Supp.2d

596, 606 (S.D.Tex.1999). The *WRT Creditors* court summarized and noted that, since the U.S. Supreme Court's decision in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co*., 458 U.S. 50  (1982), courts have treated state law claims for pre-bankruptcy petition breaches of contract as non-core matters. *Id*. at 609–611. Where all of a case's alleged tortious conduct and breaches of contract occurred pre-petition, the case is non-core to the bankruptcy proceeding.

TPT contends that this action is not based on any right created by the federal bankruptcy law. As found by the Court in the first remand, it is based on state created rights. Moreover, this suit is not a proceeding that could arise only in the context of a bankruptcy. This removed action was pending when Crowe filed his Chapter 11 case. It is simply a state action that, had there been no bankruptcy, could have and would have proceeded in state court. Defendants argue that this proceeding, including the counterclaims, is a core proceeding, because the potential effect of a permanent injunction would "seriously and substantially interfere with the Debtor's Chapter 11 plan and ability to reorganize under Chapter 11." *R. 28, p. 6.*

The Court declines to engage in a detailed analysis of whether this case is a "core" proceeding versus a "related to" Crowe's bankruptcy, because the Court agrees that remand is proper. As discussed below, the doctrines of equitable remand and permissive abstention support the Court's decision to decline to exercise jurisdiction in the proceedings.

### E. DISCRETIONARY ABSTENTION AND EQUITABLE REMAND

Alternative to TPT's argument that its claims do not constitute a "core" proceeding in the Crowe's Arizona bankruptcy, Plaintiff urges the Court to abstain from exercising jurisdiction pursuant to 28 U.S.C. § 1334 and to otherwise remand pursuant 28 U.S.C. 1452(b), which authorizes the court to remand "on any equitable ground." The Fifth Circuit succinctly discussed permissive and mandatory abstention as follows:

> Under the "permissive abstention" doctrine, 28 U.S.C. § 1334(c)(1), courts have broad discretion to abstain from hearing state law claims whenever appropriate "in the interest of justice, or in the interest of comity with State courts or respect for State law." *See also Wood v. Wood* (*In re Wood*), 825 F.2d 90, 93 (5th Cir.1987) (noting that § 1334(c)(1) "demonstrate[s] the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case"). Under § 1334(c)(2), however, courts must abstain from hearing a state law claim for which there is no independent basis for federal jurisdiction other than § 1334(b) "if an action is commenced, and can be timely adjudicated, in a state forum of appropriate jurisdiction." Mandatory abstention applies only to non-core proceedings—that is, proceedings "related to a case under title 11," but not "arising under title 11, or arising in a case under title 11." 28 U.S.C. §§ 157(b)(1) & 1334(c)(2). A court, however, may abstain at its discretion from deciding either core or non-core proceedings under § 1334(c)(1) if the interests of justice, comity, or respect for state law so require.

*Matter of Gober*, 100 F.3d 1195, 1206 (5th Cir.1996).

In addition to these doctrines of abstention, the Court is authorized by §

1452(b) to remand on equitable grounds.[8] Even if a case is properly removed and the district court has jurisdiction, the case may be remanded if, in its discretion, the court determines that such remand is appropriate. *See id*. "In determining whether equitable remand is appropriate, the following considerations are relevant: (1) *forum non conveniens*; (2) whether the action has been bifurcated by removal; (3) whether a state court is better able to respond to questions involving state law; (4) expertise of a particular court; (5) duplicative and uneconomic effort of judicial resources in two forums; (6) prejudice to the involuntarily removed parties; (7) comity; and (8) a lessened possibility of an inconsistent result." *Nase v. TECO Energy, Inc*., 2010 WL 924290, at *4 (E.D.La.,2010) (citing *Browning v. Navarro*, 743 F.2d 1069, 1076 n.21 (5th Cir. 1984)). The Court is vested with "broad discretion to grant or deny a motion to remand on any equitable ground." *Id*. Of the factors that apply to this case, all dictate remanding this action to state court.

First, Arizona would constitute an inconvenient forum for TPT, a Louisiana company which sustained damages in Louisiana. Moreover, this case has been pending in Louisiana State Court since 2014 and has now been subjected to removal twice (the first of which was found to be frivolous).

Second, this action relates only tangentially to Crowe's bankruptcy case. The substantive claims have nothing whatever to do with bankruptcy laws or the Arizona

---

[8] While TPT addressed permissive abstention and not equitable remand, the Court will address equitable remand.

bankruptcy court. Defendants assert that Crowe's bankruptcy case is implicated because TPT's action against Crowe could increase the size of his bankruptcy estate. But this consideration is present in almost any bankruptcy-related proceeding, and is insufficient to tip the equities in Defendants' favor. *Nase v. TECO Energy, Inc*., 2010 WL 924290, at *3 (E.D.La.,2010). Although a final judgment in this action could lead to further bankruptcy proceedings, at this juncture "these concerns are speculative and insubstantial issues." *In re Wood*, 825 F.2d at 98. Further, to maintain jurisdiction will likely result in bifurcation of the case as to the non-debtor defendants.

Third, Plaintiff's claims arise under Louisiana law. The state court is thoroughly familiar with the claims between TPT and Defendants, has addressed numerous procedural issues, issued an injunction and was in the process of deciding further discovery issues. These state law claims are more properly addressed by the Louisiana state court.

Fourth, this case has been pending in state court for approximately five years. Removal at this stage would significantly prejudice TPT. Removal would also ignore TPT's efforts in the Louisiana state court in moving this case to trial and result in much wasted time and effort. Principles of comity and judicial economy, as well as the interests in having a prompt and just resolution of these issues are best served by a Louisiana state-court determination of the parties' rights and liabilities.

Fifth, there is little federal interest in trying plaintiffs' claims in federal court. This Court has already remanded this case upon the first removal for lack of subject matter jurisdiction.

Finally, it makes little sense to require TPT to prosecute its claims against Crowe in a new forum in Arizona, while having to prosecute its claims against the other defendants in the Louisiana forum of its original choice. As one court aptly noted in a similar case, "[f]ailure to remand would require the plaintiffs to pursue their claims in multiple forums, even if the stay were lifted, and would cause needless waste of already limited judicial resources." *Wise v. Cypress Manor Care Ctr., Inc*., 2005 WL 2487950, at *2 (W.D. La. Oct. 6, 2005).

Here, the balance of factors overwhelmingly supports equitable remand. The claims asserted by TPT as well as and the various counterclaims raised by Defendants, involve questions of Louisiana law better addressed by a Louisiana state court. Further, remand preserves the forum chosen by TPT. For these reasons, the Court concludes that this case, although properly removed, should be remanded to the Sixteenth Judicial District Court on the equitable grounds cited above.

## IV. CONCLUSION

For the reasons provided in the foregoing, the Court recommends that this action be remanded to the 16th Judicial District Court, Parish of West St. Mary.

29

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed.R.Civ.P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th  Cir.1996).

**THUS DONE AND SIGNED** this 12th day of August, 2019.

CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE